**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SECURITES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : No. 07-CV-6146 : : ECF case (PKC) |
| v. | : : |
| THEODORE ROXFORD a/k/a LAWRENCE DAVID NIREN and HOLLINGSWORTH, ROTHWELL & ROXFORD, | : : : : : |
| Defendants. | : : |

---

**PLAINTIFF SEC'S MOTION AND MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**<u>DEFENDANT ROXFORD A/K/A NIREN'S MOTION TO DISMISS</u>**

Plaintiff Securities and Exchange Commission ("SEC") submits this memorandum of law, together with the Declaration of Pamela H. Nolan, in support of its opposition to Defendant Roxford a/k/a Niren's Motion to Dismiss.

**<u>INTRODUCTION</u>**

Defendant Theodore Roxford, who is also known as Lawrence David Niren ("Defendant Roxford a/k/a Niren") along with Defendant Hollingsworth, Rothwell & Roxford ("Defendant HRR") engaged in a fraudulent scheme, making phony takeover offers to manipulate the share prices of securities which trade on the New York Stock Exchange and the NASDAQ National Market. The fraudsters approached targets and offered to purchase shares without any reasonable basis for believing they could raise the necessary funds, then publicized their offers in order to induce investors to purchase the companies' stock, thereby manipulating the price of the securities.

Defendant Roxford a/k/Niren asks this Court to dismiss the Complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, failure to plead fraud with particularity and forum non-conveniens.  None of these claims have merit.  This Court has personal jurisdiction over Defendant Roxford a/k/a Niren. He was personally served while he was present in San Francisco and has numerous contacts with the United States: He is currently a partner in Hollingsworth, Rothwell & Roxford, an entity formed under Florida law.  He engaged in a scheme to manipulate the share price of securities of five companies which trade on the New York Stock Exchange or on the NASDAQ National Market, and, as part of his fraudulent scheme, in at least one instance, purchased shares of a company which trades on the New York Stock Exchange.  As the Complaint states a claim arising under the federal securities laws, this Court has subject matter jurisdiction. The allegations in the Complaint, as described in detail below, meet the standard for pleading with particularity under Fed. R. Civ. P. 9(b).  Finally, Defendant Roxford a/k/a Niren has failed to demonstrate that Argentina provides an adequate alternative forum. Defendant Roxford a/k/a Niren's Motion to Dismiss should be denied.

## ARGUMENT

I. **This Court Has Personal Jurisdiction Over Defendant Roxford a/k/a Niren.**

    A.  **The legal standard for personal jurisdiction is satisfied in this case.**

In establishing personal jurisdiction, "the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction." <u>Distefano v. Carozzi North America, Inc.</u>, 286 F.3d 81, 84 (2d Cir. 2001).  Moreover, pleadings and affidavits are construed in the light most favorable to the plaintiff, resolving all doubts in its favor.  <u>Id</u>.

Section 27 of the 1934 Exchange Act provides for nationwide jurisdiction for violations of its securities fraud provisions. 15 U.S.C. § 78aa; see also Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d. Cir. 1991). Personal jurisdiction under the federal securities laws is thus national in scope, encompassing all individuals with minimum contacts with the United States as a whole. "Since the Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment [any] personal jurisdiction challenge . . . must be tested against due process standards." SEC v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990). "Those standards permit the exercise of jurisdiction over a defendant whose 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).[1]

### B. This Court has personal jurisdiction over Defendant Roxford a/k/a Niren based on his numerous contacts with the United States.

Defendant Roxford a/k/a Niren has had extensive contacts with the United States and based on his conduct and connections with the United States he should reasonably have "anticipate[d] being haled into court" here. World-Wide Volkswagen Corp. v.

---

[1] A non-resident defendant must have "certain minimum contacts" with the forum jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement et al., 326 U.S. 310, 316 (1945). Personal jurisdiction may be asserted over an individual who is not present, where the defendant is (1) doing business in the state, (2) doing an act in the state, or (3) causing an effect in the state by an act done elsewhere. Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1340 (2d Cir.1972). Minimum contacts must be established with the United States as a whole, not with New York. See e.g., GMS Group, Inc. v. Sentinel Trust Co., No. 97-CIV-1342 (WK) 1997 WL 414147 (S.D.N.Y. July 23, 1997) ("It is not the State of New York but the United States 'which would exercise its jurisdiction over them [the defendants]'"); Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir. 1974); Leema Enterprises, Inc. v. Willi, 575 F. Supp. 1533, 1536 (S.D.N.Y. 1983); Gardner v. Enright, 71 F.R.D. 656, 660-61 (E.D.N.Y. 1976).

3

Woodson, 444 U.S. at 297.[2] Defendant Roxford a/k/a Niren is a partner in Hollingsworth, Rothwell & Roxford, an entity formed under the law of the state of Florida.[3] See Memorandum of Law in Support of Defendant HRR's Motion to Dismiss, Securities and Exchange Commission v. Theordore Roxford et al., 1:07-CIV-6146, Doc. No. 15 at 6 ("It is undisputed that HRR is a Florida Partnership"). As a result Defendant Roxford a/k/a Niren has a business presence within the United States.[4] Id. As alleged in the Complaint, Defendant Roxford a/k/a Niren, along with Defendant HRR, engaged in a series of phony tender offers for five companies with the intent to manipulate the share price of securities of those companies. (Complt. ¶ 17 at 4). Each of the companies trades on exchanges within the United States: Sony, Zapata and Playboy trade on the New York Stock Exchange; Edgetech and PeopleSupport trade on the NASDAQ National Market. (Complt. ¶ ¶ 12, 13, 14, 15, 16 at 3-4).

In addition, Defendant Roxford a/k/a Niren, in furtherance of his fraudulent scheme, purchased 100 shares of Sony common stock, which trade on the New York Stock Exchange. (Complt. ¶ 17 at 5); See Declaration of Pamela H. Nolan ("Nolan Decl.") ¶ ¶ 4, 5, attached as Exhibit 1. He conducted these trades through a brokerage account with TD Waterhouse Investor Services, Inc., (subsequently known as TD Ameritrade), a company located at 100 Wall Street, NY, NY. See Nolan Decl. ¶ 2.

Finally, in promoting his fraudulent scheme, Defendant Roxford a/k/a Niren

---

[2] Defendant Roxford a/k/a Niren was personally served on June 30, 2007 by Tony Klein of Capitol Process Services, Inc., at the Gateway Inn, 438 O'Farrell Street, San Francisco, California.

[3] The partnership originally had four partners: Hollingsworth, Mayer, Rothwell and Roxford. Towards the end of February 2003, Mayer's name appears to have been dropped, with Hollingsworth, Rothwell and Roxford remaining.

[4] Defendant Roxford a/k/a Niren's claims regarding failure to join indispensable parties are similarly meritless. To the extent he argues that Defendant HRR is owned by individuals in Argentina, Defendant HRR is a party to this case and has made no claims of any nexus to Argentina in its filings other than the location of Defendant Roxford a/k/a Niren himself.

contacted numerous persons located within the United States, in order to falsely represent his takeover offers as genuine. For example, Defendant Roxford a/k/a Niren contacted John P. Molner of Brown Brothers Harriman & Co., located at 140 Broadway, NY, NY, in January 2003, proposing that Molner participate in Defendants' scheme to manipulate the share price of Sony through publicizing a tender offer. See Nolan Decl. ¶ 6. Defendant Roxford a/k/a Niren also contacted Robert Kindler of JP MorganChase, located at 1 Chase Manhattan Plaza, NY, NY, by telephone and e-mail in February 2003 seeking to persuade him to participate in Defendant Roxford a/k/a Niren's and Defendant HRR's scheme to manipulate the share price of Sony. See Nolan Decl. ¶ 7. In March 2003, Defendant Roxford a/k/a Niren contacted Jerome Cincotta of Citigroup Global Markets, Inc., located at 77 Water Street, NY, NY, and sought to persuade him to participate in Defendant Roxford a/k/a Niren's and Defendant HRR's fraudulent scheme to manipulate the share price of Zapata. See Nolan Decl. ¶ 8. Finally, Defendant Roxford a/k/a Niren filed a Complaint in the United States District Court for the Middle District of Florida in Theodore Roxford v. Zachary Prensky and Eileen Katz Prensky, 6:05-CV-138-ORL- JA-KRS, Doc. No. 1 (M. Dist. Fla. January 26, 2005) in which he admitted that, pursuant to a contract, he performed work for Zachary Prensky of Little Bear Investments, located at 11 Penn Plaza, 5th floor, NY, NY, and that he arranged for several of his clients to make offers to purchase PeopleSupport on Prensky's behalf. See Nolan Decl. ¶ 9. In his Complaint, Defendant Roxford a/k/a Niren admitted contacting Prensky by telephone at Prensky's New York phone number and by sending mail to Prensky's New York mailing address. See Nolan Decl. ¶ 9. This Court has ample basis

for asserting personal jurisdiction over Defendant Roxford a/k/a Niren in light of Defendant Roxford a/k/a Niren's conduct in the United States.

**II.    This Court Has Subject Matter Jurisdiction Over This Securities Fraud Action.**

This is a federal securities fraud action which arises under sections 9(a) and 14(e) of the Securities and Exchange Act of 1934. (Cmplt. ¶ 5 at 2). This Court has subject matter jurisdiction pursuant to the following provisions: 15 U.S.C. § 78u(d) ("Injunction proceedings; authority of court to prohibit persons from serving as officers and directors; money penalties in civil actions"); 15 U.S.C. § 78u(e)("Mandamus");  15 U.S.C. § 78aa ("Jurisdictions of offenses and suits"); and 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Defendant Roxford a/k/a Niren's assertions that this Court lacks jurisdiction over this federal securities fraud action are meritless.

**III.   The Allegations In The Complaint Were Plead With Particularity As Required Under Fed. R. Civ. P. 9(b).**

Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir. 1995) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)). In addition, the complaint should "plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless

disregard for the truth." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001) (citing Connecticut Nat'l. Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)).

The Complaint details numerous fraudulent statements made by Defendant Roxford a/k/a Niren, directly and through Defendant HRR, including the following:

(1) February 17, 2003 Defendant Roxford a/k/a Niren caused Defendant HRR to send e-mail offer to Sony to purchase shares for $86, despite lacking any financial support for the bid. (Complt. ¶ 21 at 5);

(2) March 3, 2003 Defendant Roxford a/k/a Niren caused Defendant HRR to send an e-mail to Zapata offering to purchase all outstanding common stock for $45 per share, for a total sum of $107 million in financing, even though Defendants had not raised any portion of that sum. (Complt. ¶ 32 at 8);

(3) March 4, 2003 e-mail from Defendant Roxford a/k/a Niren to Zapata also stating that Defendant HRR had pre-arranged financing. (Complt. ¶ 33 at 8);

(4) March 11, 2003 letter that Defendant Roxford a/k/a Niren caused Defendant HRR to send by e-mail to Zapata claiming that the Defendants' bankers would be pleased to meet with Zapata regarding the $50 a share offer, when no bankers had in fact agreed to finance the offer. (Complt. ¶ 41 at 9);

(5) July 30, 2003 letter from Defendant HRR to Edgetech describing HRR's "success at enhancing value for Zapata" and proposing to do the same for Edgetech shareholders. (Complt. ¶¶ 53, 54 at 11);

(6) August 8, 2003 and August 14, 2003 offers from Defendant HRR to Edgetech revising the share price being offered, even though Defendants had no intent to commence the offer within a reasonable time, no intent to complete the offer and no reasonable belief that Defendants would have the means to purchase the securities. (Complt. ¶¶ 49, 50 at 10);

(7) November 13, 2003 offer by Defendant Roxford a/k/a Niren to Hugh Hefner and Christie Hefner to take Playboy private by purchasing 27.4 million shares at $23, for a total sum of $630 million, even though Defendant Roxford a/k/a Niren had no intent to complete the offer or reasonable believe that they would have the means to purchase the securities. (Complt. ¶¶ 60, 64 at 12-13);

(8) December 21, 2004 e-mail from Defendant Roxford a/k/a Niren to PeopleSupport offering to purchase the company for $14 per share even though his intent was to manipulate the price of PeopleSupport stock and he had no reasonable belief that he would have the means to purchase the securities. (Complt. ¶¶ 65, 69, 70 at 13).

The allegations offered in the Complaint, of which the above statements are representative examples, satisfy the pleading standard of Fed. R. Civ. P. 9(b).

## IV. The Court Should Not Dismiss This Federal Securities Fraud Action So That It Can Be Heard In Argentina Under Forum Non-Conveniens.

The Second Circuit has defined the three-step process for analyzing forum non-conveniens claims:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005).

### 1. Substantial deference should be accorded to the SEC in litigating federal securities fraud actions in courts of the United States.

When a plaintiff selects her home as a forum, the plaintiff should be given "great deference," but when a foreign resident selects a United States forum, the plaintiff is entitled to "less deference." Iragorri v. United Techs, Corp., 274 F.3d 65, 71 (2d Cir. 2001). The SEC, the federal agency entrusted with enforcing the federal securities laws, should be accorded great deference in its choice of forum in bringing suit in this District Court of the United States. Far from presenting a scenario of a foreign plaintiff who engages in forum-shopping by selecting a United States jurisdiction to bring its claim, the SEC's choice to bring suit in United States courts, as opposed to foreign courts, is integral to its mission to enforce the United States federal securities laws. Congress specifically authorized the Commission to enforce the federal securities laws in the courts of the United States. See e.g., 15 U.S.C. § 78aa ("The district courts of the United States

8

and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter").

### 2. Argentina is not an adequate alternative forum for adjudicating this federal securities fraud action.

"To secure dismissal of an action on grounds of forum non-conveniens, a movant must demonstrate the availability of an adequate alternative forum. . . . If the movant fails to carry this burden, the forum non-conveniens motion must be denied" <u>Access Industries, Inc.</u> 416 F.3d at 156. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64, 75 (2d Cir. 2003) (citing <u>Piper Aircraft Corp. v. Reyno</u>, 454 U.S. 235, 254 n. 22 (1981)). Defendant Roxford a/k/a Niren has requested that this suit be litigated in Argentina's courts, as a result, presumably he would submit to service of process there. Defendant HRR, however, has given no indication that it would submit to service of process in Argentina.

Even if Defendant HRR, which appears to have no ties to Argentina, did submit to service of process in Argentina, forum non-conveniens should be denied because Argentina is not an adequate alternative forum to adjudicate U.S. federal securities fraud claims. Defendant Roxford a/k/Niren, the moving party, has offered no evidence Argentina's courts permit litigation of federal securities fraud actions or that Argentina possesses any laws comparable to the securities fraud laws of the United States. Nor has Defendant Roxford a/k/a Niren made any showing that Argentina's courts permit litigation of securities fraud actions with the possibility of securing the relief which the SEC seeks in this litigation: an injunction and civil penalties. Defendant Roxford a/k/a Niren's request should be denied.

### 3. The balance of private and public interests weigh heavily against relocating this action to Argentina.

In weighing private interests, courts consider factors including, "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . and all other practical problems'" Iragorri, 274 F.3d at 73-74 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S.501, 508 (1947)). Given that Defendant HRR is an entity formed under the laws of the State of Florida and has not acknowledged any connection to Argentina, other than the physical presence of Defendant Roxford a/k/a Niren in Argentina, the private interests of Defendant HRR weigh heavily against dismissing the case for forum non-conveniens. Indeed, Defendant HRR has filed a separate Motion to Dismiss asking the court to transfer the case to a proper venue, without naming Argentina as a potential forum.

Private interests are to be weighed against public interests. The Second Circuit has defined the public interests analysis as follows:

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

Id. (quoting Gilbert, 330 U.S. at 508-09). Defendant Roxford a/k/a Niren has not demonstrated any public interest in relocating a federal securities fraud action from this Court to Argentina. Both private and public interest weigh strongly against granting Defendant Roxford a/k/a Niren's motion for forum non-conveniens.

### **CONCLUSION**

For the reasons stated above, Defendant Roxford a/k/a Niren's Motion to Dismiss should be denied.