UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 07-CV-6146 |
| Plaintiff, | ECF case (PKC) |
| v. | |
| THEODORE ROXFORD a/k/a LAWRENCE DAVID NIREN and HOLLINGSWORTH, ROTHWELL & ROXFORD, | |
| Defendants. | |

**THE SEC'S BRIEF IN SUPPORT OF
ITS MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ROXFORD**

Of Counsel:

Antonia Chion
Yuri B. Zelinsky
Lawrence C. Renbaum
Pamela H. Nolan

Sarah L. Levine (pro hac #651718)
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
(202) 551-4511

**TABLE OF CONTENTS**

**Page**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.  A DEFAULT JUDGMENT AGAINST THE
    DEFAULTING DEFENDANT IS APPROPRIATE . . . . . . . . . . . . . 5

    A.  The Relevant Factors Weigh In
        Favor Of A Default Judgment . . . . . . . . . . . . . . . 6

    B.  Defendant Roxford Engaged In Phony Takeover
        Offers In Violation of the Exchange Act. . . . . . . . . 8

II. THE COURT SHOULD GRANT THE
    RELIEF SOUGHT BY THE SEC . . . . . . . . . . . . . . . . . . 10

    A.  An Injunction Is Warranted . . . . . . . . . . . . . . . 10

    B.  The Court Should Impose A Civil
        Monetary Penalty On Defendant Roxford . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**CASES**                                                                                                   **Page**

American Alliance Insurance Co.
    v. Eagle Insurance Co., 92
    F.3d 57 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 5

CFTC v. American Metal Exchange
    Corp., 693 F. Supp. 168
    (D.N.J. 1988) . . . . . . . . . . . . . . . . . . . . . . 11

Enron Oil Corp. v. Diakuhara, 10
    F.3d 90 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . 7

Feeley v. The Whitman Corp., 65
    F. Supp. 2d 164 (S.D.N.Y.
    1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Joe Hand Promotions, Inc. v. Abu
    Zahri, 969 F. Supp. 849
    (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . 5

Mason Tenders District Council
    Welfare Fund v. M & M
    Contracting & Consulting,
    193 F.R.D. 112 (S.D.N.Y.
    2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pinaud v. County of Suffolk, 52
    F.3d 1139 (2d Cir. 1995) . . . . . . . . . . . . . . . . . 5

Schwartz-Liebman Textiles v.
    Last Exit Corp., 815 F.
    Supp. 106 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . 8

SEC v. Chester Holdings, Ltd.,
    41 F. Supp. 2d 505 (D.N.J.
    1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Commonwealth Chemical
    Securities, Inc., 574 F.2d
    90 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . 10

SEC v. First City Financial
    Corp., 890 F.2d 1215 (D.C.
    Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 10

SEC v. Lorin, 76 F.3d 458 (2d
    Cir. 1996) . . . . . . . . . . . . . . . . . . . . .  11

SEC v. Management Dynamics, Inc.,
    515 F.2d 801 (2d Cir. 1975) . . . . . . . . . . . .  11

SEC v. Moran, 944 F. Supp. 286
    (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . .  12

SEC v. Softpoint, Inc., 958 F.
    Supp. 846 (S.D.N.Y. 1997),
    aff'd, 159 F.3d 1348 (2d
    Cir. 1998) . . . . . . . . . . . . . . . . . . 11, 13

SEC v. Wang, 699 F. Supp. 44
    (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . .   7

**SECURITIES LAWS**

Section 9(a) of the Securities
    Exchange Act of 1934, 15 U.S.C.
    § 78i . . . . . . . . . . . . . . . . . . . . . .1, 10

Section 14(e) of the Securities
    Exchange Act of 1934, 15 U.S.C.
    § 77ne . . . . . . . . . . . . . . . . . . . . . 1, 10

**SEC RULES**

Rule 14e-8 . . . . . . . . . . . . . . . . . . . . . . 1, 10

**PROCEDURAL RULES**

Fed. R. Civ. P. 55 . . . . . . . . . . . . . . . . . . . .  1

**LEGISLATIVE HISTORY**

H.R. Rep. 101-616, 101st Cong.,
    2d Sess., reprinted in
    1990 U.S. Code Cong. &
    Admin. News 1379 . . . . . . . . . . . . . . . . .  12

## THE SEC'S BRIEF IN SUPPORT OF
## ITS MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ROXFORD

The Securities and Exchange Commission moves for entry of a default judgment against Defendant Theodore Roxford, also known as Lawrence David Niren, ("Defendant Roxford") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The facts supporting the SEC's motion are set forth in the Declarations of Mark H. Lineberry and Sarah L. Levine filed with this Brief.

## BACKGROUND

The SEC commenced this civil enforcement action on June 29, 2007. The Complaint alleged that Defendant Roxford, along with Defendant Hollingsworth, Rothwell & Roxford ("Defendant HRR"), violated Sections 9(a) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78i, 78n(e), and SEC Rule 14e-8 promulgated thereunder. According to the Complaint, Defendant Roxford publicized phony offers to takeover five companies: Sony Corporation, ("Sony"), Zapata Corporation ("Zapata"), Edgetech Services Inc. ("Edgetech"), Playboy Enterprises, Inc. ("Playboy") and PeopleSupport, Inc. ("PeopleSupport"). Defendant Roxford's intent in making the phony public tender offers was to manipulate the price of the target company's stock by inducing investors to purchase the stock of the target company. Defendant Roxford did not intend to complete the offers and did not have the financial means to do so.

The SEC served a summons and a copy of the Complaint on Defendant Roxford on June 30, 2007. See Proof of Service, 8/28/07, attached as Exhibit 1 to the Declaration of Sarah L. Levine ("Levine Decl."). After being served, Defendant Roxford repeatedly sought adjournment of court dates and repeatedly failed to appear in violation of court orders. On July 10, 2007, the Court set an initial conference for September 7, 2007. See Docket #3. On August 22, 2007, the Court denied Defendant Roxford's request that the conference be adjourned and ordered Defendant Roxford to appear before the Court on September 7, 2007 or face a default judgment. See Docket #6. On September 5, 2007, the Court denied Defendant Roxford's motion for reconsideration of the Court's denial of adjournment and ordered that the conference remain scheduled for September 7, 2007. See Docket #16. On September 6, 2007, the Court denied Defendant Roxford's additional motion seeking adjournment of the September 7, 2007 conference and ordered that the Defendant appear on September 7, 2007 in person or by an attorney admitted to practice in this District. See Docket #18. Defendant Roxford failed to appear at the September 7, 2007 conference. See Docket 9/7/07, Minute Entry ("No appearance by Mr. Theodore Roxford a/k/a Lawrence David Niren.").

On September 10, 2007, the Court ordered Defendant Roxford to appear in person or by an attorney admitted to practice before the Court at a conference scheduled for September 28, 2007. See Docket # 20. On September 24, 2007, Defendant Roxford e-mailed the Court a letter asking for an extension of time to file Rule

2

26 disclosures. On September 24, 2007, the Court granted Defendant Roxford's request for an extension of time to file his Rule 26 disclosures and adjourned the date of the conference scheduled for September 28, 2007 to October 5, 2007. See Docket # 28. The Court ordered Defendant Roxford to appear on October 5, 2007 in person or by an attorney admitted to practice before the Court of face a default judgment. Id. On October 3, 2007, Defendant Roxford e-mailed a motion to the Court seeking an adjournment of the October 5, 2007 conference. On October 3, 2007, the Court adjourned the October 5, 2007 and ordered that the conference be held on October 18, 2007. See Docket # 30. The Court ordered Defendant Roxford to appear at the October 18, 2007 conference in person or by an attorney admitted to practice before the Court or face a default judgment. Id. On October 18, 2007, Defendant Roxford failed to appear before the Court. See Docket #32, Order of 10/18/07 ("Defendant Lawrence Niren a/k/a Thomas Roxford did not appear at today's conference either in person or by an attorney admitted to practice before this Court who had first filed a notice of appearance. . . . His absence is unexcused and was noted in the transcript of today's proceeding.").

In addition to failing to appear in violation of court orders, Defendant Roxford repeatedly violated the Court's procedural rules. On July 25, 2007, the Court issued an order instructing Defendant Roxford that "whether or not he retains an attorney, he must, in any event, comply with the Federal Rules of Civil Procedure, the local rules of this Court and the individual

3

practices of the undersigned." See Docket # 5. On September 24, 2007, the Court further issued an order instructing Defendant Roxford that he "is advised that future applications to this Court will not be accepted via email and he should consult the undersigned's Individual Practices available on the Court's website for the proper procedure in seeking an adjournment." See Docket # 28.

The Individual Practices of Judge P. Kevin Castel define the method of communication to be used with Chambers (letter, telephone, fax) and the circumstances under which each method of communication is to be used. See Individual Practices of Judge P. Kevin Castel, attached as Exhibit 2 to Levine Decl. The Individual Practices of the Court do not permit communication with Chambers via e-mail. See id. Nevertheless, without having obtained permission from the Court to do so, Defendant Roxford e-mailed the Court directly on numerous occasions including on August 21, 2007, September 3, 2007, September 24, 2007, September 28, 2007 and October 29, 2007. See E-mails from Defendant Roxford attached as Exhibit 3 to Levine Decl.

Furthermore, pursuant to individual practices of the Court, parties are required to seek a pre-motion conference with the Court prior to filing a motion, unless such motion is specifically excluded from this requirement. See Ex. 2 to Levine Decl. Nevertheless, without having received permission from the Court to do so, Defendant repeatedly filed motions with the Court without seeking a pre-motion conference with the Court,

including, for example, motions filed on September 3, 2007 and October 29, 2007. See Ex. 3 to Levine Decl.

As a result of Defendant Roxford's repeated failures to appear in violation of the Court's orders and repeated violation of the Court's procedural rules, the SEC requests that the Court enter the default judgment submitted with this Brief.

## ARGUMENT

I.  **A DEFAULT JUDGMENT AGAINST THE DEFAULTING DEFENDANT IS APPROPRIATE.**

   A.  **The Relevant Factors Weigh In Favor Of A Default Judgment.**

The Second Circuit has recognized that "courts have an interest in expediting litigation [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." American Alliance Insurance Co. v. Eagle Insurance Co., 92 F.3d 57, 61 (2d Cir. 1996). Factors to be considered in issuing a default judgment are: (1) whether the default is largely technical, (2) whether the moving party has been substantially prejudiced by the delay, (3) the amount of money potentially involved, (4) whether material issues of fact exist, (5) how harsh of an effect a default judgment might have, and (6) whether the court would be obliged to set aside the default on the defendant's motion. Pinaud v. County of Suffolk, 52 F.3d 1139, 1152 (2d Cir. 1995); Feeley v. The Whitman Corp., 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999); Joe Hand Promotions, Inc. v. Abu Zahri, 969 F. Supp. 849, 850 (N.D.N.Y. 1997).

5

Here, the relevant factors weigh strongly in favor of a default judgment. First, the default is not technical. Defendant Roxford willfully chose not to appear before the Court after repeatedly being ordered by the Court to appear or to arrange for counsel to appear on his behalf. See Docket #18. Defendant Roxford repeatedly requested that the Court postpone the scheduling of the hearings, but even in the instances when the Court accommodated Defendant Roxford's scheduling requests, Defendant Roxford failed to appear at the rescheduled Court conferences. See Docket #32. Defendant Roxford also repeatedly violated the Court's procedural rules despite the Court's explicit Order to cease violating the procedural rules. See Ex.3 to Levine Decl. Finally, Defendant Roxford himself filed a motion with the Court requesting that the Court find him in default. See Niren's Motion for Default, attached as Exhibit 4 to Levine Decl. All these factors indicate that the default is willful and not technical.

Second, the SEC has been prejudiced by the delay caused by the default. The SEC has repeatedly been called to attend hearings where Defendant Roxford has failed to appear. Moreover, as a party to this action the SEC is required to follow the Court's procedural rules and is prejudiced by Defendant Roxford's failure to adhere to the Court's 'level playing field.'

Third, the amount of money involved will be determined by the Court when it exercises discretion in awarding civil penalties. Thus, the amount of money implicated in the default will reflect the Court's determination of the scope of the fraud

6

that Defendant Roxford perpetrated and does not weigh against issuing a default judgment.

Fourth, material issues of fact do exist. Defendant Roxford appears to claim he had access to billions of dollars in potential financing. The SEC, as alleged in the Complaint, has asserted that Defendant Roxford's offers to purchase each of the five companies at issue in the Complaint were phony and that Defendant Roxford had neither the intent nor the ability to follow-through on any of the offers.

Fifth, a default judgment will not have a harsh effect because the defaulting defendant has made a conscious decision not to defend this action. As noted previously, Defendant Roxford himself has requested that the Court find him in default. See Ex. 4 to Levine Decl.

Finally, the Court will not be obliged to set aside the default judgment in the future because (1) the default was caused by the defendant's own culpable conduct, (2) the SEC would be prejudiced by such a result, and (3) Defendant Roxford himself filed a motion with the Court asking the Court to find him in default. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Mason Tenders District Council Welfare Fund v. M & M Contracting & Consulting, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000); SEC v. Wang, 699 F. Supp. 44, 45 (S.D.N.Y. 1988).

### B. Defendant Roxford Engaged In Phony Takeover Offers In Violation of the Exchange Act.

A default establishes a defendant's liability, and the allegations of the Complaint are taken as true. Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992). As alleged in the Complaint, on February 7, 2003, Defendant Roxford, through Defendant HRR, made an offer to purchase all shares of Sony for $85 per share, at a total potential cost of approximately $78 billion. See Compl. ¶ 16 at 5; Levine Decl. Ex. 5. Prior to sending the offer letter, Roxford and HRR purchased Sony common stock and options. See Compl. ¶ 17 at 5. Roxford subsequently made two additional offers for Sony. Prior to making the offers, Roxford solicited a number of financiers to provide financing for the deal, see Levine Decl. Exs. 6, 7 and 8, but never obtained any commitments for financing.

On March 3, 2003, Defendant Roxford, through Defendant HRR, made an offer to purchase all shares of Zapata for $45 per share for a total cost of approximately $107 million. See Compl. ¶32 at 8; Levine Decl. Ex. 9. Zapata issued a press release regarding the offer, and numerous newspapers reported on the offer. After Zapata rejected the offer, Defendant HRR made a second offer for Zapata, which was also rejected by the company. See Compl. ¶¶ 38, 40 at 9; Levine Decl. Ex. 10.

On July 30, 2003, Defendant Roxford through Defendant HRR made an offer to acquire ninety percent of the shares of Edgetech for $1.00 per share. Edgetech issued a press release and filed a Form 8-K regarding the offer. See Compl. ¶¶ 49, 50, 52 at 10; Levine Decl. Ex. 11. The Defendants subsequently made two additional offers for Edgetech, on August 8, 2003, and August 14, 2003. See Compl; ¶¶ 53,54 at 11; Levine Decl. Exs. 12 and 13.

On November 3, 2003, Defendant Roxford, through a purported partnership named Barahona, Ferrari & Roxford ("BFR"), made an offer for Playboy for $23 per share, or $630 million, and on November 4, 2003, posted the offer an internet message board. See Compl. ¶60 at 12; Levine Decl. Exs. 14 and 15.

On December 21, 2004, Defendant Roxford, purporting to be a prominent Indian investor, sent an email to PeopleSupport offering to purchase the company for $14 per share. See Compl. ¶65 at 13; Levine Decl. Ex. 16. After doing some investigation and determining that the offer was not legitimate and had not come from the Indian investor, the company issued a press release stating that the offer was not legitimate. See Compl. ¶66 at 13. On January 3, 2005, Defendant Roxford, posing as another foreign investor, made another offer for PeopleSupport, this time for $20 per share. See Compl. ¶67 at 13; Levine Decl. The offers were posted on internet message boards. See Compl. ¶67 at 13; Levine Decl. Exs. 17 and 18. In each of these instances, Defendant Roxford did not intend to complete the offers and did not have

9

the financial means to do so. See Compl. ¶2 at 1. Defendant Roxford's intent in making the phony public tender offers was to manipulate the price of the target company's stock and constituted a violation of Sections 9(a) and 14(e) of the Exchange Act, and Rule 14e-8 promulgated thereunder. See Compl. ¶1 at 1.

## II. THE COURT SHOULD GRANT THE RELIEF SOUGHT BY THE SEC.

### A. An Injunction Is Warranted.

The Exchange Act provides for injunctive relief when a person or entity has violated its provisions. See Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d). Such relief is appropriate where there is a realistic likelihood that the defendant will repeat his violations. SEC v. Materia, 745 F.2d 197, 200 (2d Cir. 1984); SEC v. Commonwealth Chemical Securities, Inc., 574 F.2d 90, 99-100 (2d Cir. 1978); SEC v. First City Financial Corp., 890 F.2d 1215, 1228 (D.C. Cir. 1989).

The Second Circuit has articulated several factors to be considered in determining the probability of future violations: (1) the fact that the defendant has been found liable for illegal conduct; (2) the degree of scienter involved; (3) whether the infraction was an isolated occurrence; (4) whether the defendant continues to maintain that his past conduct was blameless; and (5) whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated. Commonwealth Chemical Securities, Inc., supra, 574

10

F.2d at 100; First City Financial Corp., supra, 890 F.2d at 1228; SEC v. Softpoint, Inc., 958 F. Supp. 846, 867 (S.D.N.Y. 1997), aff'd, 159 F.3d 1348 (2d Cir. 1998).

An injunction against Defendant Roxford is warranted. Defendant Roxford's illegal conduct was serious, and entailed a high degree of scienter. Defendant Roxford participated directly and extensively in the fraudulent scheme and in his filings throughout this litigation continues to maintain that his conduct was blameless. Moreover, Defendant Roxford's manipulation occurred over a period of more than four years. The recurring and persistent nature of his violations makes it likely that he will, without an injunction, commit future violations. SEC v. Lorin, 76 F.3d 458, 461 (2d Cir. 1996); SEC v. Management Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975); CFTC v. American Metal Exchange Corp., 693 F. Supp. 168, 172 (D.N.J. 1988). Defendant Roxford is a recidivist securities law violator who will always have such opportunities. See SEC v. Chester Holdings, Ltd., 41 F. Supp. 2d 505, 527 (D.N.J. 1999)("[The Defendant's] past involvement with securities law violations makes it extremely likely that future violations may occur"). All of the relevant factors demonstrate that he is likely to continue committing securities violations unless the Court enjoins them from doing so.

### B. The Court Should Impose A Civil Monetary Penalty On Defendant Roxford.

The SEC requests that the Court impose on Defendant Roxford a civil monetary penalty pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act"). See Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

By enacting the Remedies Act, Congress sought to achieve the dual goals of punishment of the violator and deterrence of future violations. SEC v. Moran, supra, 944 F. Supp. at 296. As the House Report on the Remedies Act made clear, a substantial penalty is necessary to deter securities law violations:

> The Committee believes that the money penalties proposed in this legislation are needed to provide financial disincentives to securities law violators other than insider trading. . . . Absent a criminal prosecution or a private suit for damages . . . even the defendant who makes a deliberate decision to violate the law and causes significant harm to the markets does not risk any monetary sanction more severe than an order of disgorgement. . . . The Committee therefore concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise may provide great financial returns to the violator.

H.R. Rep. 101-616, 101st Cong., 2d Sess., reprinted in 1990 U.S. Code Cong. & Admin. News 1379, 1384. The Exchange Act provides that the court should determine the amount of the civil penalty in light of the facts and circumstances of the particular case. 15 U.S.C. § 78u(d)(3).

The Remedies Act's penalties are established in three tiers, imposing escalating levies corresponding to the severity of the

offense. Here, the maximum third-tier civil penalty is appropriate in light of the following circumstances: (1) Defendant Roxford's misconduct involved fraud and deceit; (2) he exhibited a deliberate disregard of regulatory requirements; and (3) his misconduct created a significant risk of substantial losses to others. <u>Softpoint, Inc.</u>, <u>supra</u>, 958 F. Supp. at 868; <u>see also</u> Declaration of Mark H. Lineberry. A third-tier penalty is not unduly punitive in light of his repeated and deliberate violations of the securities laws over many years.

## CONCLUSION

Having repeatedly failed to appear before the Court at court ordered hearings and having repeatedly violated the Court's procedural rules and orders, Defendant Roxford is subject to a default judgment. The default was the result of the defendant's own culpable conduct, the SEC has been prejudiced by the Defendant's failure to appear and Defendant Roxford himself filed a motion with the Court requesting that the Court find him in default. The circumstances call for the relief sought by the SEC, including an injunction and a civil monetary penalty. The SEC respectfully requests that the Court enter a default judgment against Defendant Roxford and order the remedies sought.

Dated:   October 31, 2007

                                    Respectfully submitted,

                                    _____
Of Counsel:                         Sarah L. Levine (pro hac #651718)
                                    Attorney for Plaintiff
Antonia Chion                       Securities and Exchange Commission
Yuri B. Zelinsky                    100 F Street, N.E.
Lawrence C. Renbaum                 Washington, D.C. 20549-4030
Pamela H. Nolan                     (202) 551-4511

**CERTIFICATE OF SERVICE**

I, Sarah L. Levine, an attorney, hereby certify that on October 31, 2007, I caused to be served the foregoing SEC'S NOTICE OF MOTION FOR DEFAULT JUDGMENT and the accompanying Declarations of Sarah L. Levine and Mark H. Lineberry, and other supporting papers, on all parties set forth below, by the following methods:

**BY E-MAIL and U.S.Mail**
Theodore Roxford also known as Lawrence David Niren
Quo Vila
Sarmiento 1426, 7th floor, C.P.
Buenos Aires, 1024, Argentina

**BY U.S.Mail**
Richard A. Roth, Esq.,
The Roth Law Firm, PLLC
545 Fifth Avenue, Suite 960
New York, New York 10017

Sarah L. Levine