UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. 07-CV-6146 |
| Plaintiff, | ECF case (PKC) |
| v. | |
| THEODORE ROXFORD a/k/a LAWRENCE DAVID NIREN and HOLLINGSWORTH, ROTHWELL & ROXFORD, | |
| Defendants. | |

**DECLARATION OF MARK H. LINEBERRY IN SUPPORT OF SEC'S MOTION FOR DEFAULT JUDGEMENT**

I, Mark H. Lineberry, pursuant to 28 U.S.C. § 1746 declare as follows:

1. I am Chief of the Office of Market Surveillance in the Division of Enforcement of the United States Securities and Exchange Commission ("the Commission" or "SEC"). My office investigates allegations of illegal conduct in the United States securities markets. I submit this declaration in support of the SEC's Motion for Default Judgment. The facts set forth herein are based upon my personal knowledge or upon information contained in the files of the Commission.

**SONY CORPORATION**

2. On February 7, 2003, Defendant Roxford through the partnership, Defendant Hollingsworth, Rothwell and Roxford ("Defendant HRR") made an offer to purchase all shares of Sony Corporation ("Sony") for $85 per share, at a total potential cost of approximately $78 billion.

3. On February 17, 2003, Defendant HRR made a second offer to purchase Sony, this time for $86 per share at a total potential cost of approximately $79 billion.

4.     On February 24, 2003, Defendant HRR made a third offer to purchase Sony, again for $86 per share, at a total potential cost of approximately $79 billion, and posted its offer letter on Defendant HRR's website.

5.     On March 14, 2003, Defendant HRR filed proxy solicitation material on the Commission's Electronic Data Gathering and Retrieval ("EDGAR") system, requesting that Sony's Board of Directors accept seven proposals of Defendant HRR, including the sale of various Sony assets and subsidiaries. Because it was filed on EDGAR, it was publicly available via the Commission's website and other news outlets to any investor researching Sony Corporation.

6.     Defendant Roxford's fraudulent offer, through Defendant HRR, to purchase shares of Sony created a significant risk of potential losses to investors by creating the risk that investors would purchase shares of Sony at fraudulently inflated prices.

7.     In creating the risk that investors would purchase shares of Sony at fraudulently inflated prices, Defendant HRR further put investors at significant risk of losses by potentially undermining investors' faith in the accuracy and integrity of the pricing of the United States' capital markets.

## ZAPATA CORPORATION

8.     On March 3, 2003, Defendant Roxford through Defendant HRR made an offer to purchase all shares of Zapata Corporation ("Zapata") for $45 per share for a total cost of approximately $107 million.

9.     On March 5, 2003, Zapata issued a press release publicizing the offer on Business Wire.

10.    On March 5, 2003, the share price of Zapata common stock rose approximately 12.5%, from the previous day's close of $36.39 to a high of $41.00 before closing at $37.78. The volume spiked to approximately 279,000 – 34 times higher than the prior day's volume of 8,100 shares. The spike in volume resulted in a temporary halt in trading.

11.    On March 6, 2003, numerous newspapers reported on the offer.

12.    On March 7, 2003, Zapata issued a press release regarding the offer, stating that the Board of Directors of Zapata had decided that it was not in the best interests of the Zapata shareholders to pursue the offer.

13.    On March 8, 2003, news outlets reported Zapata's rejection of the offer.

14.    On March 9, 2003, Defendant HRR made a second offer for Zapata, this time for $50 per share.

15.    On March 10, 2003, the second offer was posted on internet message boards and reported in the press.

16.    On March 11, 2003, the share price opened at $38.64, up $0.14, reaching a high for the day of $38.92 on light volume.

17.    On March 17, 2003, Zapata filed a Form 8-K with the Commission, explaining that Zapata's bylaws and articles of incorporation contained anti-takeover provisions including the requirement that a merger or acquisition be approved by 80% of the holders of the stock.

18.    The March 5, 2003 increase in the price of Zapata shares and increase in the volume of trading in Zapata shares reflect the fraud on the market caused by Defendant Roxford and Defendant HRR's phony tender offer to Zapata.

19.    Defendant Roxford and Defendant HRR's fraudulent offer to purchase shares of Zapata resulted in substantial losses to investors, as investors were put at risk of purchasing shares of Zapata at fraudulently inflated prices.

20.    In creating the risk that investors would purchase shares of Zapata at fraudulently inflated prices, and in causing investors to purchase shares of Zapata at fraudulently inflated prices, Defendant Roxford and Defendant HRR further put investors at significant risk of losses by

potentially undermining investors' faith in the accuracy and integrity of the pricing of the United States' capital markets.

## EDGETECH SERVICES, INC.

21.     On July 30, 2003, Defendant Roxford through Defendant HRR made an offer to acquire 90% of the shares of Edgetech Services, Inc., for $1 per share at a total cost of approximately $30 million.

22.     On July 31, 2003, Edgetech issued a press release reporting the unsolicited offer and the AP Newswire reported the offer.

23.     On July 31, 2003, the share price of Edgetech common stock rose approximately 368%, from the previous day's close of $0.16 to a high of $0.75 before closing at $0.50. The volume spiked to approximately 11.5 million shares – 48 times higher than the prior day's volume of 234,000 shares.

24.     The July 31, 2003 increase in the price of Edgetech shares and increase in the volume of trading in Edgetech shares reflect the fraud on the market caused by the Defendant Roxford and Defendant HRR's phony tender offer to Edgetech.

25.     On August 6, 2003, Edgetech filed a Form 8-K regarding the offer.

26.     On August 8, 2003, Defendant Roxford, through Defendant HRR, made a second offer for Edgetech, increasing the offer to $1.15 per share. Defendant HRR publicized its offer by posting messages on internet message boards.

27.     On August 11, 2003, Edgetech filed a Form 8-K regarding the second offer.

28.     On August 12, 2003, Defendant HRR posted a message on an internet message board stating that due diligence on the proposed transaction was going forward.

29. On August 14, 2003, Defendant HRR made a third offer, again for $1.15 per share, but subject to certain conditions.

30. On August 15, 2003, Defendant HRR posted a message on an internet message board regarding the transaction

31. On August 18, 2003, Edgetech filed a Form 8-K regarding the third offer.

32. On August 30, 2003, Edgetech announced that it received an unsolicited offer from Ferrari Investments of Argentina for $0.80 per share.

33. On September 25, 2003, Edgetech filed a Form 8-K stating that Edgetech had attempted to reach agreement with Defendant HRR, but that it became apparent that the "takeover bid had no substance."

34. Defendant Roxford and Defendant HRR's fraudulent offer to purchase shares of Edgetech resulted in substantial losses to investors, as investors were put at risk of purchasing shares of Edgetech at fraudulently inflated prices.

35. In creating the risk that investors would purchase shares of Edgetech at fraudulently inflated prices, and in causing investors to purchase shares of Edgetech at fraudulently inflated prices, Defendant Roxford and Defendant HRR further put investors at significant risk of losses by potentially undermining investors' faith in the accuracy and integrity of the pricing of the United States' capital markets.

## CONCLUSION

36. By making false offers for Sony, Zapata and Edgetech, as described above, Defendant HRR attempted to manipulate the prices of the stocks and create artificial price and volume inflation. Investors consequently paid more for the stocks than they would have absent the manipulation. Defendant HRR's actions had the potential to, and did,

cause significant artificial price inflation and resulting damage to investors who overpaid for the stocks during the period of artificial price inflation.

I declare under penalty of perjury that the foregoing is true and correct.

Mark H. Lineberry

Executed on: February 5, 2008
Washington, D.C.