UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
_____
                             :
SECURITIES AND EXCHANGE      :
COMMISSION,                  :      No. 07-CV-6146
                             :
              Plaintiff,     :      ECF case (PKC)
      v.                     :
                             :
THEODORE ROXFORD            :
a/k/a LAWRENCE DAVID NIREN and:
HOLLINGSWORTH, ROTHWELL &    :
ROXFORD,                     :
                             :
              Defendants.    :
_____ :
```

**THE SEC'S BRIEF IN SUPPORT OF
ITS MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT HOLLINGSWORTH, ROTHWELL & ROXFORD**

Of Counsel:

Antonia Chion
Yuri B. Zelinsky
Lawrence C. Renbaum
Pamela H. Nolan

Sarah L. Levine (pro hac #651718)
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
(202) 551-4511

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .6

I.   DEFENDANT HRR'S EGREGIOUS CONDUCT MEETS THE LEGAL
     STANDARD FOR DEFAULT . . . . . . . . . . . . . . . . .6

     A.   The Relevant Factors Weigh In
          Favor Of A Default Judgment . . . . . . . . . . .6

     B.   Defendant HRR Engaged In Phony Takeover
          Offers . . . . . . . . . . . . . . . . . . . . . 12

II.  THE COURT SHOULD GRANT THE
     RELIEF SOUGHT BY THE SEC  . . . . . . . . . . . . . .16

     A.   An Injunction Is Warranted  . . . . . . . . . . .16

     B.   The Court Should Impose A Civil
          Monetary Penalty On Defendant HRR . . . . . . . .18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .20

# TABLE OF AUTHORITIES

**CASES**                                                                                 **Page**

American Alliance Insurance Co.
    v. Eagle Insurance Co.,
    92 F.3d 57 (2d Cir. 1996) . . . . . . . . . . . . . . . 6

Eagle Associates v. Bank of Montreal,
    926 F.2d 1305 (2d Cir. 1991) . . . . . . . . . . . . . 6, 10

Enron Oil Corp. v. Diakuhara,
    10 F.3d 90 (2d Cir. 1993) . . . . . . . . . . . . . . 12

Feeley v. The Whitman Corp.,
    65 F. Supp. 2d 164 (S.D.N.Y. 1999) . . . . . . . . . . 6

Mason Tenders District Council
    Welfare Fund v. M & M
    Contracting & Consulting,
    193 F.R.D. 112 (S.D.N.Y. 2000) . . . . . . . . . . . 12

Pinaud v. County of Suffolk,
    52 F.3d 1139 (2d Cir. 1995) . . . . . . . . . . . . . . 6

Schwartz-Liebman Textiles v.
    Last Exit Corp.,
    815 F.Supp. 106 (S.D.N.Y. 1992) . . . . . . . . . . . 12

SEC v. Chester Holdings, Ltd.,
    41 F. Supp. 2d 505 (D.N.J. 1999) . . . . . . . . . . . 17

SEC v. Commonwealth Chemical
    Securities, Inc., 574 F.2d 90 (2d Cir. 1978) . . . . . 16

SEC v. First City Financial
    Corp., 890 F.2d 1215 (D.C. Cir. 1989) . . . . . . . . 16

SEC v. Lorin, 76 F.3d 458 (2d Cir. 1996) . . . . . . . . . 17

SEC v. Management Dynamics, Inc.,
    515 F.2d 801 (2d Cir. 1975) . . . . . . . . . . . . . 17

SEC v. Materia, 745 F.2d 197 (2d Cir. 1984). . . . . . . . 16

SEC v. Palmisano, 135 F.3d 860, 866 (2d Cir. 1998). . . . . .18

SEC v. Softpoint, Inc.,
    958 F. Supp. 846 (S.D.N.Y. 1997),
    aff'd, 159 F.3d 1348 (2d
    Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 17, 19

SEC v. Wang, 699 F. Supp. 44 (S.D.N.Y. 1988) . . . . . . . . . . 12

## SECURITIES LAWS

Section 9(a) of the Securities
    Exchange Act of 1934, 15 U.S.C.
    § 78i . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Section 14(e) of the Securities
    Exchange Act of 1934, 15 U.S.C.
    § 77ne . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## SEC RULES

Rule 14e-8 . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## PROCEDURAL RULES

Fed. R. Civ. P. 55 . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . .3

Fed. R. Civ. P. 30 . . . . . . . . . . . . . . . . . . . . . .3,8

## LEGISLATIVE HISTORY

H.R. Rep. 101-616, 101st Cong.,
    2d Sess., reprinted in
    1990 U.S. Code Cong. &
    Admin. News 1379 . . . . . . . . . . . . . . . . . . . 18

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
                                    :
SECURITIES AND EXCHANGE             :
COMMISSION,                         :      No. 07-CV-6146
                                    :
                Plaintiff,   :      ECF case (PKC)
      v.                            :
                                    :
THEODORE ROXFORD                    :
a/k/a LAWRENCE DAVID NIREN and:
HOLLINGSWORTH, ROTHWELL &           :
ROXFORD,                            :
                                    :
                Defendants.  :
                                    :
```

## THE SEC'S BRIEF IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT HOLLINGSWORTH, ROTHWELL & ROXFORD

The Securities and Exchange Commission ("the Commission" or "SEC") moves for entry of a default judgment against Defendant Hollingsworth, Rothwell & Roxford ("Defendant HRR") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The facts supporting the SEC's motion are set forth in the Declarations of Mark H. Lineberry, Chief of the Office of Market Surveillance in the Division of Enforcement of the SEC, and Sarah L. Levine, Esq., filed with this Brief.

### BACKGROUND

The SEC commenced this civil enforcement action on June 29, 2007. The Complaint alleged that Defendant HRR along with Defendant Theodore Roxford, also known as Lawrence David Niren ("Defendant Roxford"), violated Sections 9(a) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78i, 78n(e), and SEC Rule 14e-8 promulgated thereunder. According to the Complaint, Defendant HRR publicized phony offers to takeover three companies: Sony Corporation, ("Sony"), Zapata Corporation ("Zapata") and Edgetech Services Inc. ("Edgetech"). Defendant HRR's intent in making the phony public tender offers was to manipulate the price of the target companys' stock by inducing investors to purchase the stock of the target company. Defendant HRR did not intend to complete the offers and did not have the financial means to do so.

The SEC served a summons and a copy of the Complaint on Defendant HRR on July 6, 2007. See Proof of Service, 8/29/07, attached as Exhibit 1 to the Declaration of Sarah L. Levine, Esq., ("Levine Decl."). In the initial stages of the litigation, Defendant HRR obtained representation from counsel, specifically Jordan Kam, Esq., and Richard Roth, Esq., both of the Roth Law Firm, PLLC ("Roth Law Firm") who noticed an appearance on Defendant HRR's behalf. On December 13, 2007 the Court granted Defendant HRR's counsel's motion to withdraw. See Docket #49. Also on December 13, 2007 the Court ordered Defendant HRR to obtain new counsel by January 14, 2008 or face a default motion. See id. The Court's Memorandum Endorsement stated: "Hollingsworth, Rothwell & Roxford, a non-natural person unity [sic], must appear by an attorney admitted to practice before this Court no later than 1/14/08. If no notice of appearance is filed, plaintiff may seek a default judgment." See id. No notice of appearance by counsel representing Defendant HRR has been

filed. See Clerk's Certification attached as Exhibit 12 to Levine Decl.

In addition to failing to obtain representation by counsel who has filed a notice of appearance with the Court, Defendant HRR has engaged in numerous discovery violations. Defendant HRR has failed to file an Answer to the SEC's Complaint. On August 30, 2007, Defendant HRR filed a Motion to Dismiss in lieu of an Answer. See Docket #12. On October 18, 2007 the Court denied Defendant HRR's Motion to Dismiss. See Docket #32. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A) Defendant HRR was obligated to file an Answer within 10-days of the Court's denial of its Motion to Dismiss. No Answer by Defendant HRR has been filed to date. See Clerk's Certification attached as Exhibit 12 to Levine Decl.

Defendant HRR also failed to appear for its deposition, despite having been noticed while represented by counsel. On November 15, 2007 the SEC served a copy of its Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) on Defendant HRR. See Cover Letter to Roth Law Firm and Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) attached as Exhibit 15 to Levine Decl. The deposition of Defendant HRR was scheduled for December 18, 2007, 10:00am at the office of the United States Securities and Exchange Commission, 3 World Financial Center, New York, New York. See id. Defendant HRR failed to appear at the deposition or to provide any form of explanation or excuse for its failure to appear. See Transcript

of 12/18/07 Deposition of Defendant HRR ("No witness has appeared") attached as Exhibit 16 to Levine Decl.

Defendant HRR failed to respond to plaintiff's interrogatories and request for document production. On October 16, 2007 the SEC sent Plaintiff SEC's First Request for Production of Documents and First Set of Interrogatories to each defendant. Despite passage of the 30-day deadline for responding, neither defendant has responded to the pending written discovery requests. See Letter to Defendant HRR Re Failure to Respond to Written Discovery attached as Exhibit 17 to Levine Decl.

Furthermore, Defendant HRR failed to adequately comply with its disclosure obligations. In his initial disclosures, Defendant Roxford stated that he intended to disclose "[m]ore than a dozen members of the Barahona and Ferrari families in Argentina." See Initial Disclosure of Defendant Roxford attached as Exhibit 18 to Levine Decl. Defendant HRR incorporated this representation by reference. See Initial Disclosure of Defendant HRR attached as Exhibit 19 to Levine Decl. To date neither defendant has provided the names or contact information for these individuals.

In addition, in his initial disclosures Defendant Roxford stated he possessed "[d]ozens of agreements, contracts, banking arrangements, minutes, meetings, financings, letters, proof of financings and bank backing for deals . . ." See Initial Disclosure of Defendant Roxford attached as Exhibit 20 to Levine Decl. Defendant HRR incorporated this representation by reference. See Initial Disclosure of Defendant HRR attached as

4

Exhibit 19 to Levine Decl. To date neither defendant has produced these documents nor has either defendant provided information regarding when or where they would be available for inspection or copying.

Finally, on November 20, 2007, while Defendant HRR was represented by counsel, Defendant HRR filed a document captioned "Notice of Dismissal of Counsel and Consent to Entry of Default Judgment." See Docket # 43, attached as Exhibit 2 to Levine Decl. The document states that "The HRR Partners desire to permit Plaintiff to enter default judgment against HRR" and is signed by each of the partners of Defendant HRR – Hugh Hollingsworth, Kenneth Rothwell and Theodore Roxford. See id.

As a result of Defendant HRR's failure to obtain counsel who has noticed an appearance with the Court and Defendant HRR's repeated discovery violations, including its failure to Answer the Complaint, failure to appear at a properly noticed deposition, failure to respond to interrogatories, failure to respond to requests for document production and failure to meet its disclosure obligations, the SEC requests that the Court enter the default judgment submitted with this Brief.

**ARGUMENT**

I.    **DEFENDANT HRR'S EGREGIOUS CONDUCT**
      **MEETS THE LEGAL STANDARD FOR DEFAULT**

      A.    **The Relevant Factors Weigh In**
            **Favor Of A Default Judgment.**

The Second Circuit has recognized that "courts have an interest in expediting litigation [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct." American Alliance Insurance Co. v. Eagle Insurance Co., 92 F.3d 57, 61 (2d Cir. 1996). Factors to be considered in issuing a default judgment are: (1) whether the default is largely technical, (2) whether the moving party has been substantially prejudiced by the delay, (3) the amount of money potentially involved, (4) whether material issues of fact exist, (5) how harsh of an effect a default judgment might have, and (6) whether the court would be obliged to set aside the default on the defendant's motion. Pinaud v. County of Suffolk, 52 F.3d 1139, 1152 (2d Cir. 1995); Feeley v. The Whitman Corp., 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999).

These factors weigh strongly in favor of a default judgment in this case. First, the default is not technical. A non-natural person, such as a partnership, may not appear pro-se, but may only appear through representation by counsel. See Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991) (holding partnership may not appear pro-se). On December

13, 2007 when the Court granted the Roth Law Firm's Motion to Withdraw, the Court ordered Defendant HRR to arrange for new counsel to notice an appearance on its behalf before January 14, 2008 or face a default. See Docket #49. The Court further required then-counsel for Defendant HRR "to transmit a copy of this Order to his client and file an affidavit that he has done so." See id. Defendant HRR was sent a copy of the Court's Order and thus was on notice that it was required to obtain new counsel or be held in default. See Docket #50. Defendant HRR's failure to obtain counsel prevents this litigation from moving forward; Defendant HRR, as a partnership, is prohibited from appearing pro se before the Court, but has also failed to obtain representation by counsel.

Moreover, Defendant HRR's numerous discovery violations reflect that Defendant HRR's default is not merely technical, but rather reflects a consistent failure to meet its responsibilities as a party to this litigation. Although this action was commenced on June 29, 2007, Defendant HRR has never answered the Complaint. Defendant HRR filed a Motion to Dismiss which was denied on October 18, 2007. See Docket #32. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendant HRR was obligated to file an Answer within 10 days of the Court's denial of its Motion to Dismiss. No Answer by Defendant HRR has been filed to date, despite the passage of more than 90 days since the deadline to answer. See Clerk's Certification attached as Exhibit 12 to Levine Decl.

Defendant HRR's failure to meet its responsibilities as a party to this litigation is further reflected in its failure to appear at its properly noticed deposition. On November 15, 2007 the SEC served counsel for Defendant HRR with a Notice of Deposition informing Defendant HRR that it would be deposed by the SEC on December 18, 2007, at 10:00 am at the office of the United States Securities and Exchange Commission, 3 World Financial Center, New York, New York. See Cover Letter to Roth Law Firm and Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) attached as Exhibit 15 to Levine Decl. Although Defendant HRR was served with the Notice of Deposition, through its counsel at the time, Defendant HRR failed to appear at the deposition. See Transcript of 12/18/07 Deposition of Defendant HRR ("No witness has appeared.") attached as Exhibit 16 to Levine Decl. Defendant HRR provided no explanation or excuse for its absence, either before, during or after the scheduled time of the deposition, but simply failed to showup.

Defendant HRR's abnegation of its discovery obligations is also evident in Defendant HRR's failure to respond to written discovery requests. On October 16, 2007 the SEC sent Defendant HRR the SEC's First Request for Production of Documents and First Set of Interrogatories. To date, Defendant HRR has failed to respond to either written discovery request. See Letter to Defendant HRR Re Failure to Respond to Written Discovery attached as Exhibit 17 to Levine Decl.

Finally, Defendant HRR failed to meet its disclosure obligations. Specifically, in its initial disclosures, Defendant

HRR incorporated by reference a statement by Defendant Roxford
that it had numerous relevant documents in Argentina and numerous
witnesses, also based in Argentina. See Initial Disclosure of
Defendant HRR attached as Exhibit 19 to Levine Decl.; Initial
Disclosure of Defendant Roxford attached as Exhibit 18 to Levine
Decl. To date, Defendant HRR has failed to identify any of these
witnesses or produce or otherwise make available for inspection
any documents. This consistent pattern of failing to meet basic
discovery obligations, along with Defendant HRR's failure to heed
the Court's instruction that it must arrange for counsel to
notice an appearance on its behalf or face default, support the
finding that Defendant HRR's default is willful, not merely
technical.

Second, the SEC has been substantially prejudiced by the
delay caused by the Defendant HRR's default. As noted previously,
a non-natural person who is a party to a litigation, including a
partnership such as Defendant HRR, may not appear pro se.
Although Defendant HRR is thus legally prohibited from
representing itself pro se, it has also failed to obtain counsel.
Such a catch-22 leaves the SEC in a situation where the SEC has
no opposing counsel to deal with in moving the litigation
forward, but neither can the SEC treat Defendant HRR as a pro se
litigant who will be representing itself before the Court.
Moreover, Defendant HRR's failure to answer the Complaint has
prejudiced the SEC by denying it access to Defendant HRR's
response to the allegations in the Complaint. Defendant HRR's
failure to appear at its properly noticed deposition further

9

prejudiced the SEC -- counsel for the SEC traveled from Washington DC to New York for the deposition, the SEC paid a court reporter and videographer to be present at a deposition where the witness failed to appear, and the SEC was denied the opportunity to question the defendant regarding the allegations in the Complaint. Defendant HRR's failure to adequately meets its disclosure obligations or to respond to the SEC's interrogatories and request for document discovery have also prejudiced the SEC by denying the SEC access to the discovery tools guaranteed under the federal rules. Defendant HRR's discovery abuses are particularly egregious as the discovery deadline set by the Court expired December 31, 2007.  Thus Defendant HRR appears to have attempted to "stone-wall" the SEC and refuse to meet its basic discovery obligations until the discovery clock ran out. See e.g., Eagle Insurance Co., 92 F.3d at 61 ("the basic purpose of default judgment is to protect parties from undue delay-harassment.")

Third, the amount of money involved in a default judgment against Defendant HRR will be determined by the Court when it exercises discretion in awarding civil penalties. Thus, the amount of money implicated in the default will be commensurate with the Court's determination of the scope of the fraud perpetrated by Defendant HRR. This factor, therefore, does not weigh against issuing a default judgment.

Fourth, Defendant HRR's failure to comply with its discovery obligations makes it difficult to determine to what extent material issues of fact exist. Having failed to answer the

10

complaint, make adequate initial disclosures, respond to written discovery or appear at its properly noticed deposition, Defendant HRR's own dereliction of duty prevents a clear determination of Defendant HRR's factual position in the litigation. Given that Defendant HRR's own conduct obscures an assessment of the extent to which material issues of fact exit, this factor should further weigh in favor of a default judgment against Defendant HRR.

Fifth, a default judgment will not have a harsh effect because the defaulting defendant has made a deliberate decision not to defend this action and has consented to a default judgment.  On November 20, 2007 Counsel for Defendant HRR filed a document with the Court, which it entered into the docket with the title "Request to Enter Default against Hollingsworth, Rothwell & Roxford." See Docket #43. The document, captioned, "Notice of Dismissal of Counsel and Consent to Entry of Default Judgment" was signed by each of the three partners of Defendant HRR (Hugh Hollingsworth, Kenneth Rothwell and Theodore Roxford) and stated that Defendant HRR consents that a default judgment be entered against it. See Notice of Dismissal of Counsel and Consent to Entry of Default Judgment attached as Exhibit 2 to Levine Decl. The document states, in relevant part: "The HRR Partners desire to permit Plaintiff to enter default judgment against HRR. . . . HRR hereby permits Plaintiff to enter a default judgment against HRR in this lawsuit. . . ." See id. Defendant HRR has thus consented to a default judgment being entered against it.

Finally, the Court will not be obliged to set aside the default judgment in the future because (1) the default was caused by the defendants' own culpable conduct, (2) the SEC would be prejudiced by such a result, and (3) Defendant HRR itself filed a motion with the Court consenting to a default judgment. See Notice of Dismissal of Counsel and Consent to Entry of Default Judgment attached as Exhibit 2 to Levine Decl.; Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Mason Tenders District Council Welfare Fund v. M & M Contracting & Consulting, 193 F.R.D. 112, 114-15 (S.D.N.Y. 2000); SEC v. Wang, 699 F. Supp. 44, 45 (S.D.N.Y. 1988).

### B.  Defendant HRR Engaged in Phony Takeover Offers.

A default establishes a defendant's liability, and the allegations of the Complaint are taken as true.  Schwartz-Liebman Textiles v. Last Exit Corp., 815 F. Supp. 106, 107 (S.D.N.Y. 1992).  As alleged in the Complaint, on February 7, 2003, Defendant HRR, along with Defendant Roxford, made an offer to purchase all shares of Sony for $85 per share, at a total potential cost of approximately $78 billion.  See Compl. ¶ 16 at 5; Sony Offer Letter attached as Ex. 3 to Levine Decl.  Prior to sending the offer letter, Defendant HRR and Defendant Roxford purchased Sony common stock and options.  See Compl. ¶ 17 at 5. Defendant HRR purchased the stock and options in order to profit from what they believed would be the inevitable rise in Sony's price per share after Defendant HRR's offer to purchase Sony became public. See Compl. ¶ 18 at 5. Defendant HRR, along with Defendant Roxford subsequently made two additional offers for

12

Sony on February 17, 2003 and February 24, 2003. See Compl. ¶¶
19, 23 at 5,6. Before making the offers, Defendant HRR, through
Defendant Roxford, solicited a number of financiers to provide
financing for the deal, but never obtained any commitments for
financing. See E-mail to Mohlner (1/16/03) attached as Exhibit 4
to Levine Decl., E-mail to Mohlner (1/22/03) attached as Exhibit
5 to Levine Decl., E-mail to Kindler (2/12/03) attached as
Exhibit 6 to Levine Decl. Despite the lack of financing,
Defendant Roxford, on behalf of Defendant HRR, sought to
publicize the offers for Sony by contacting numerous media
outlets. See Compl. ¶¶ 15 at 6.  Defendant HRR made numerous
false representations about its ability to finance the offers and
about its experience and expertise. See Compl. ¶¶ 28, 29 at 7.
Defendant HRR made the offer to purchase Sony with the intent of
inducing investors to purchase Sony in anticipation of the
"takeover" and thereby manipulate the price of Sony shares. See
Compl. ¶ 30 at 7.  Defendant HRR made the offer to Sony without
the intent to commence the offer within a reasonable time,
without the intent to complete the offer and without a reasonable
belief that it would secure the means to purchase the securities.
See Compl. ¶ 30 at 7,8.

    On March 3, 2003, Defendant HRR and Defendant Roxford made
an offer to purchase all shares of Zapata for $45 per share for a
total cost of approximately $107 million.  See Compl. ¶32 at 8;
Zapata Offer Letter (3/3/03) attached as Exhibit 7 to Levine
Decl.  Both Zapata and Defendant HRR issued press releases
regarding the offer, and numerous newspapers reported on the

offer.  Defendant HRR and Defendant Roxford's offer to Zapata
stated that Defendant HRR "can provide the financing for our
offer for Zapata Corporation immediately" despite the fact that
neither Defendant HRR nor Defendant Roxford had raised any
portion of the financing required to complete their offer. See
Compl. ¶32 at 8.  Defendant HRR attempted to publicize the offer
by contacting media and posting messages on internet message
boards. See Compl. ¶34 at 8. After Zapata rejected the offer,
Defendant HRR made a second offer for Zapata on March 9, 2003,
offering $50 per share despite the fact that Defendant HRR and
Defendant Roxford lacked the financing to complete the offer. See
Compl. ¶40 at 9.  Defendant HRR, in written correspondence with
Zapata, claimed "our bankers would be pleased to meet with you"
and "[w]e are working with our bankers to finalize all of our
financing" despite the absence of any realistic possibility of
obtaining financing to complete the offer to Zapata. See Compl.
¶¶41,43 at 9. Defendant HRR, along with Defendant Roxford, made
the offers to purchase Zapata with the intent to manipulate the
price of Zapata shares by publicizing the takeover offer.  They
made the offers without the intent to comment the offer within a
reasonable time, without the intent to complete the offer, and
without a reasonable belief that they would have the means to
purchase the securities. See Compl. ¶47 at 10.

On July 30, 2003, Defendant Roxford through Defendant HRR made an offer to acquire ninety percent of the shares of Edgetech for $1.00 per share. Edgetech issued a press release and filed a Form 8-K regarding the offer. See Compl. ¶¶ 49, 50, 52 at 10; Edgetech Offer Letter and Form 8-K attached as Exhibit 9 to Levine Decl. The Defendants subsequently made two additional offers for Edgetech. On August 8, 2003 Defendant HRR offered $1.15 per share; on August 14, 2003 Defendant HRR offered a modified price, contingent on the amount of shares proffered and the highest price traded in the next 10 trading days, with a ceiling of $1.15 per share. See Compl; ¶¶ 53,54 at 11; Edgetech Offer Letter (7/30/03) attached as Exhibit 10; Edgetech Offer Letter (8/14/03) attached as Exhibit 11 to Levine Decl. On August 18, 2003 Edgetech, in a filing with the SEC, stated that pending completion of an investigation into Defendant HRR's offer, the Officers and Directors who own approximately forty percent of the company shares will accept a price of $1.15 per share. See Compl. ¶ 55 at 11. On September 24, 2003, in a filing with the SEC, Edgetech stated that having attempted to reach an agreement with Defendant HRR, Defendant HRR was not responsive and as a result the company concluded that Defendant HRR's "takeover bid had no substance." See Compl. ¶ 58 at 12. Defendant HRR's failure to make good on its offer is no surprise, in light of the fact that Defendant never intended to complete the offer, and had no reasonable belief that it would have the means to complete the purchase. Instead, Defendant HRR made the offers to purchase Edgetech simply with the intent to manipulate the price

of Edgetech stock. In each of these instances, the offers to
Sony, the offers to Zapata and the offers to Edgetech, Defendant
HRR's intent in making the phony public tender offers was to
manipulate the price of the target company's stock and
constituted a violation of Sections 9(a) and 14(e) of the
Exchange Act, and Rule 14e-8 promulgated thereunder. See Compl.
¶1 at 1.

## II.    THE COURT SHOULD GRANT THE RELIEF SOUGHT BY THE SEC.

### A.    An Injunction Is Warranted.

The Exchange Act provides for injunctive relief when a
person or entity has violated its provisions.  See Section 21(d)
of the Exchange Act, 15 U.S.C. § 78u(d).  Such relief is
appropriate where there is a realistic likelihood that the
defendant will repeat his violations.  SEC v. Materia, 745 F.2d
197, 200 (2d Cir. 1984); SEC v. Commonwealth Chemical Securities,
Inc., 574 F.2d 90, 99-100 (2d Cir. 1978); SEC v. First City
Financial Corp., 890 F.2d 1215, 1228 (D.C. Cir. 1989).

The Second Circuit has articulated several factors to be
considered in determining the probability of future violations:
(1) the fact that the defendant has been found liable for illegal
conduct; (2) the degree of scienter involved; (3) whether the
infraction was an isolated occurrence; (4) whether the defendant
continues to maintain that his past conduct was blameless; and
(5) whether, because of his professional occupation, the
defendant might be in a position where future violations could be
anticipated.  Commonwealth Chemical Securities, Inc., 574 F.2d at

16

100; <u>First City Financial Corp.</u>, 890 F.2d at 1228; <u>SEC v. Softpoint, Inc.</u>, 958 F. Supp. 846, 867 (S.D.N.Y. 1997), <u>aff'd</u>, 159 F.3d 1348 (2d Cir. 1998).

An injunction against Defendant HRR is warranted. Defendant HRR's illegal conduct was serious, and entailed a high degree of scienter. It appears that the entire purpose of the "Hollingsworth, Rothwell & Roxford" partnership was to engage in fraudulent activity. Defendant HRR participated directly and extensively in the fraudulent scheme and in its filings throughout this litigation Defendant HRR has never acknowledged culpability or remorse. The recurring and persistent nature of Defendant HRR's violations makes it likely that it will, without an injunction, commit future violations. <u>SEC v. Lorin</u>, 76 F.3d 458, 461 (2d Cir. 1996); <u>SEC v. Management Dynamics, Inc.</u>, 515 F.2d 801, 807 (2d Cir. 1975); Defendant HRR is a repeat securities law violator which continues to possess the opportunity to engage in fraud. <u>See SEC v. Chester Holdings, Ltd.</u>, 41 F. Supp. 2d 505, 527 (D.N.J. 1999)("[The Defendant's] past involvement with securities law violations makes it extremely likely that future violations may occur"). Defendant HRR is likely to continue committing securities violations unless the Court enjoins them from doing so.

**B.    The Court Should Impose A Civil
Monetary Penalty On Defendant HRR.**

The SEC requests that the Court impose on Defendant HRR a
civil monetary penalty pursuant to the Securities Enforcement
Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act").
See Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).
As the Second Circuit has recognized, civil penalties under the
Remedies Act serve important goals including "encouraging
investor confidence, increasing the efficiency of financial
markets, and promoting the stability of the securities industry."
SEC v. Palmisano, 135 F.3d 860, 866 (2d Cir. 1998).  As the House
Report on the Remedies Act made clear, a substantial penalty is
necessary to deter securities law violations:

> The Committee believes that the money penalties
> proposed in this legislation are needed to provide
> financial disincentives to securities law violators
> other than insider trading. . . . Absent a criminal
> prosecution or a private suit for damages . . . even
> the defendant who makes a deliberate decision to
> violate the law and causes significant harm to the
> markets does not risk any monetary sanction more severe
> than an order of disgorgement. . . . The Committee
> therefore concluded that authority to seek or impose
> substantial money penalties, in addition to the
> disgorgement of profits, is necessary for the
> deterrence of securities law violations that otherwise
> may provide great financial returns to the violator.

H.R. Rep. 101-616, 101st Cong., 2d Sess., reprinted in 1990 U.S.
Code Cong. & Admin. News 1379, 1384.  The Exchange Act provides
that the court should determine the amount of the civil penalty
in light of the facts and circumstances of the particular case.
15 U.S.C. § 78u(d)(3).

The Remedies Act's penalties are established in three tiers, imposing escalating levies corresponding to the severity of the offense.  Here, the maximum third-tier civil penalty is appropriate in light of the following circumstances:  (1) Defendant HRR's misconduct involved fraud and deceit; (2) it exhibited a deliberate disregard of regulatory requirements; and (3) its misconduct created a significant risk of substantial losses to others.  Softpoint, Inc., 958 F. Supp. at 868.  A third-tier penalty is not unduly punitive in light of Defendant HRR's repeated and deliberate violations of the securities.

## CONCLUSION

Having failed to obtain counsel who filed a notice of appearance in this matter by January 14, 2007, the deadline set by the Court's December 13, 2007 Order, and having repeatedly violated its discovery obligations including failing to Answer, failing to appear at its properly noticed deposition, failing to respond to interrogatories, failing to respond to plaintiff's request for document production and failing to satisfy its disclosure obligations, Defendant HRR is subject to a default judgment.  The default is the result of the defendant's own culpable conduct and the SEC has been prejudiced by the Defendant HRR's failures to comply with the Court's order and its discovery obligations.  Defendant HRR has also filed a document with the Court stating that it consents to the Court entering a default judgment against it. These circumstances call for the relief sought by the SEC, including an injunction and a civil monetary penalty.  The SEC respectfully requests that the Court enter a default judgment against Defendant HRR and order the remedies sought.

Dated:   February 7, 2008

Respectfully submitted,

Of Counsel:

Antonia Chion
Yuri B. Zelinsky
Lawrence C. Renbaum
Pamela H. Nolan

Sarah L. Levine (pro hac #651718)
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-4030
(202) 551-4511